UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| EILEEN JANIS and<br>KIM COLHOFF,<br><br>   Plaintiffs,<br><br> vs.<br><br>CHRIS NELSON, in his official<br>capacity as Secretary of State of<br>South Dakota and as a member of<br>the State Board of Education;<br>MATT McCAULLEY,<br>CINDY SCHULTZ,<br>CHRISTOPHER W. MADSEN,<br>RICHARD CASEY,<br>KAREN M. LAYHER, and<br>LINDA LEA M. VIKEN, in their<br>individual and official capacities as<br>members of the State Board of<br>Elections;<br>SUE GANJE, in her individual and<br>official capacity as Auditor for<br>Shannon County; and<br>LA FAWN CONROY, in her<br>individual and official capacity as a<br>poll worker for Shannon County,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR. 09-5019-KES<br><br><br><br><br><br>ORDER DENYING DEFENDANT<br>GANJE'S MOTION TO DISMISS |

Defendant Sue Ganje moves under Fed. R. Civ. P. 12(b)(6) and 12(c) for dismissal of all counts that request injunctive and declaratory relief in

plaintiffs Eileen Janis and Kim Colhoff's amended complaint. Plaintiffs resist Ganje's motion.[1]

## BACKGROUND

On February 18, 2009, plaintiffs filed a civil action under 42 U.S.C. § 1983 alleging that their right to vote during the 2008 federal, state, and local elections had been unlawfully denied by defendants. Plaintiffs then filed an amended complaint on October 7, 2009. In the amended complaint, plaintiffs assert eight causes of action that allege various violations of their rights. Counts 1 and 2 assert that their rights under the Equal Protection and Due Process Clauses in both the Federal and South Dakota Constitutions were violated. See U.S. Const. amend. XIV, § 1; S.D. Const. Art. VI, §§ 2, 19; S.D. Const. Art. VII, § 1. Counts 3 and 4 allege violations of the Help America Vote Act (HAVA) and a South Dakota statute. See 42 U.S.C. §§ 15482, 15483; S.D. Codified Laws § 12-18-39. Count 5 alleges violations of the National Voter Registration Act (NVRA). 42 U.S.C. § 1973gg-6. In Counts 6 and 7, plaintiffs assert that defendants violated the Voting Rights Act of 1965. 42 U.S.C. §§ 1973, 1973c (hereinafter "Section 2" and "Section 5"). Finally, in Count 8, plaintiffs allege violations of the Voting

---

[1] An amended complaint was filed on October 7, 2009. While a motion to dismiss a complaint is normally rendered moot by the filing of an amended complaint, Ganje's motion to dismiss is directed at both the original complaint and the amended complaint. Thus, the court will address Ganje's motion to dismiss the amended complaint.

Rights Act of 1964 and the Privileges or Immunities Clause of the South Dakota Constitution. See 42 U.S.C. § 1971; S.D. Const. Art. VI, § 18.

In summary, plaintiffs allege that their names were unlawfully removed from the statewide and county voter registration rolls after having been sentenced to probation for their felony convictions. Plaintiffs also allege that they were not given the opportunity to cast provisional ballots despite the existence of both federal and state laws authorizing the use of provisional ballots if there is a question about voter eligibility. Plaintiffs seek declaratory, injunctive, monetary, and other forms of relief.

**STANDARD OF REVIEW**

Ganje moves to dismiss all claims seeking declaratory or injunctive relief on the basis of mootness and standing under Federal Rule of Civil Procedure 12(b)(6).[2] Under Rule 12(b)(6), the facts alleged in the complaint must be considered true and all inferences must be viewed in favor of the nonmoving party. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 465 (8th Cir. 2002)). Recently the United States Supreme Court clarified, however, that "the tenet that a court must accept as true all of the

---

[2] Regardless of whether Ganje's motion to dismiss falls under Rule 12(b)(6) or Rule 12(c), the standard of review is the same. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that the "distinction [between Rule 12(c) and 12(b)(6)] is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions") (citations omitted)).

allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. "The plausibility standard . . . asks for more than a sheer possibility that defendant has acted unlawfully." Id. at 1949.

## DISCUSSION

### I. Counts 6 and 7

Plaintiffs resist the motion to dismiss the injunctive and declaratory relief portions of their claims under Section 2 and Section 5 of the Voting Rights Act. Plaintiffs argue that they have standing and that the claims are not moot.

#### A. Standing

Ganje argues that plaintiffs do not have standing because plaintiffs are attempting to assert the claims of other potential plaintiffs who are not present in this lawsuit. Plaintiffs argue that they have standing even though other people might benefit from an injunction because plaintiffs are members of a covered language minority group that Section 2 of the Voting Rights Act

4

protects and because they are residents of a jurisdiction covered by Section 5 of the Voting Rights Act.[3]

Three elements must be satisfied in order to satisfy the standing requirement associated with the "case-or-controversy requirement of Article

---

[3] Section 2 of the Voting Rights Act states in relevant part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizens of the United States to vote on account of race or color, or in contravention of the guarantes set forth in section 1973b(f)(2) of this title[.]

42 U.S.C. § 1973(a). Section 1973b(f)(2) states that "[n]o voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a member of a language minority group." 42 U.S.C. § 1973b(f)(2).

Section 5 of the Voting Rights Act states in relevant part:

> [W]henever a State or political subdivision . . . shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure . . . such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure[.]

42 U.S.C. § 1973c(a).

III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, the litigant "must have suffered an 'injury in fact.'" Mausolf v. Babbitt, 85 F.3d 1295, 1301 (8th Cir. 1996) (quoting Lujan, 504 U.S. at 560). An individual is injured in fact when there has been "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 1301 (quoting Lujan, 504 U.S. at 560). Second, the litigant must demonstrate a "causal connection between the injury and the conduct being challenged." Id. (citing Lujan, 504 U.S. at 560). Third, it must be shown "that the injury is likely to be redressed by a favorable decision." Id. (citing Lujan, 504 at 561).

Assuming the factual allegations in the amended complaint are true, plaintiffs suffered an injury in fact in relation to their Section 5 claim because the practice or procedure of removing plaintiffs' names from the registered voting list is a change in voting procedure that has not been precleared pursuant to Section 5 of the Voting Rights Act. As noted by the United States Supreme Court, "Congress designed the preclearance procedure 'to forestall the danger that local decisions to modify voting practices will impair minority access to the electoral process." Lopez v. Monterey County, 519 U.S. 9, 23 (1996) (citation omitted). Thus, there is "an invasion of a legally protected interest" because plaintiffs are being deprived of Section 5's safeguards by the existence of an unprecleared voting practice

6

in Shannon County.  See Quick Bear Quiver v. Nelson, 387 F. Supp. 2d 1027, 1031 (D.S.D. 2005); see also Mausolf, 85 F.3d at 1301 (citation omitted).  The causal connection element is satisfied because plaintiffs' injury of being deprived of Section 5's protections is fairly traceable to Ganje's act of following a voting practice or procedure that has not been precleared.  See Quick Bear Quiver, 387 F. Supp. 2d at 1031-32.  Finally, the "redressability" element is satisfied because an order by a three-judge panel enjoining Ganje from using the unprecleared procedure until it has been precleared pursuant to Section 5 would effectively reinstate the protections afforded by Section 5.  See id.  Thus, plaintiffs have standing to pursue their claim under Section 5 of the Voting Rights Act.

With regard to Section 2 of the Voting Rights Act, the first two elements for standing are easily satisfied.  First, plaintiffs suffered an injury in fact because they were denied the right to vote.  Assuming the factual allegations are true, plaintiffs also suffered an injury in fact because numerous other members of their protected minority language group were being similarly removed from the voter eligibility list.  Second, Ganje's act of removing plaintiffs' names and other similarly situated individual's names from the eligible voter list is causally connected to plaintiffs' injuries because had she not removed the names, plaintiffs' names and other similarly

7

situated individual's names would have most likely remained on the voting list.

With regard to the third element, redressability, Ganje argues that there is no remedy available because plaintiffs' names were added back on the voting list by Ganje, are currently on the eligible voter list, and will remain there until Ganje is ordered by the court to remove them.[4] But "[j]urisdictional issues such as standing . . . are determined at the time the lawsuit was filed[.]" Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 814 (8th Cir. 2006) (citing McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 733 (8th Cir. 2005)). See also Harley v. Zoesch, 413 F.3d 866, 872 (8th Cir. 2005) ("More importantly, 'because standing is determined as of the lawsuit's commencement, we consider the facts as they existed at that time.' " (quoting Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000))). This concept is compared to the mootness doctrine, which has repeatedly been described by the Supreme Court as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

---

[4] Ganje's act of putting plaintiffs' names back on the voting list and assurance that they will remain there was done without a court order.

Thus, Ganje's argument that the current presence of plaintiffs' names on the voter list deprives plaintiffs of standing misconceives the relationship between standing and mootness. The applicable time period for purposes of determining standing is that moment when plaintiffs filed their complaint. Sierra Club, 446 F.3d at 814; Harley, 413 F.3d at 872. The requisite personal interest that must exist at the commencement of the litigation to have Article III standing to seek prospective relief is a showing that plaintiffs are likely to suffer future injury that will be remedied by the relief sought. Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006).

At the time plaintiffs filed suit, they alleged that they had previously been denied the right to vote because their names were unlawfully removed from the list of eligible voters and that their voting rights as a covered language minority voter had been unlawfully abridged. Assuming those allegations are true, there would have been no assurance that their voting rights in future elections would not be similarly infringed. An injunction, whether prohibitory or mandatory, would have given plaintiffs a remedy for their alleged injuries.[5] Thus, an injunction ordering Ganje to reinstate plaintiffs' names would ensure that their names would not be improperly

---

[5] Ganje's observation that plaintiff Janis was on the registration list at the time she filed her complaint does not mean that she lacks standing. The remedy in that situation would be a prohibitory injunction in her favor instead of a mandatory injunction.

removed in the future because of the threat of the contempt power accompanying such an order. Thus, the redressability requirement is met in this situation.

Moreover, the fact that plaintiffs' names are currently on the voter eligibility list does not deprive plaintiffs of the remedy of obtaining a declaratory judgment in their favor. See Old Person v. Brown, 312 F.3d 1036, 1050 (9th Cir. 2002) ("We conclude that the integrity of the Voting Rights Act requires that a substantive assessment be made, even if the only practical relief available is declaratory relief after an election is held."); Dickinson v. Ind. State Election Bd., 933 F.2d 497, 503 (7th Cir. 1991) (noting that a declaratory judgment would allow for "[a] victory on the merits [that] would provide an important statement of plaintiffs' rights and . . . could also provide the impetus for further action"). The redressability element is therefore also satisfied on the basis that declaratory relief may be available to plaintiffs.

Ganje contends that plaintiffs must satisfy six separate elements in order to establish that they have standing under the Voting Rights Act instead of the three elements identified in Lujan. See Newman v. Voinovich, 789 F. Supp. 1410, 1415 (S.D. Ohio 1992). The six elements are:

> (1) [they have] personally suffered or will suffer some distinct injury-in-fact as a result of defendant's putatively illegal conduct; (2) that the injury can be traced with some degree of causal certainty to defendant's conduct; (3) the injury is likely to

> be redressed by the requested relief; (4) the plaintiff[s] must assert [their] own legal rights and interests, not those of a third party; (5) the injury must consist of more than a generalized grievance that is shared by many; and (6) the [] complaint must fall within the zone of interests to be regulated or protected by the rule of law in question.

Id. at 1415 (citations omitted).

The first three elements articulated in Newman are essentially the same as the three identified in Lujan. See Lujan, 504 U.S. at 560. These elements have been referred to as "constitutional requirements" by the United States Supreme Court. See Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982) ("Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing."). The last three elements listed in Newman are what the United States Supreme Court has referred to as "prudential principles." Id. at 474.

Ganje has not identified an Eighth Circuit case that has required a plaintiff to satisfy the "prudential principles" recognized by the United States Supreme Court in order to have standing under Section 2 and Section 5 of the Voting Rights Act. Moreover, the "prudential principles" are satisfied in this case in light of the history surrounding the Voting Rights Act, the fact that plaintiffs are part of a group protected by the Voting Rights Act, and the

11

allegation that they had been denied of their right to vote.[6] Thus, plaintiffs have standing under Sections 2 and 5 of the Voting Rights Act even if the prudential principles guiding the standing requirement are considered.

Finally, the court rejects Ganje's argument that plaintiffs lack standing because some of the injunctive relief sought within the complaint would help other individuals not listed as a party. See Prof'l Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist., 730 F.2d 258, 273-74 (5th Cir. 1984) ("An injunction, however, is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled."). Whether or not an injunction would help or assist non-party individuals has nothing to do with the three constitutional requirements set out in Lujan.[7] In light of the purpose of the Voting Rights Act as explained above and because plaintiffs are asserting

---

[6] As noted in the Senate Report that accompanied the 1982 amendment to 42 U.S.C. § 1973, one purpose of the Voting Rights Act was to address a recurring problem in this area of the law: by the time an issue is brought before a court, "the election had often taken place, local officials had devised a new scheme, or both had occurred." S. Rep. No. 97-417, at *5 (1982), reprinted in 1982 U.S.C.C.A.N. 177, at 182. A determination that plaintiffs lack standing because their names were subsequently placed back on the voting list would only perpetuate that problem.

[7] This argument may well apply to the prudential principle establishing that an individual does not have standing to only assert the legal rights of others. In this case, however, that principle does not apply because plaintiffs are asserting their own rights under the Voting Rights Act.

12

their own rights, it does not matter that others might welcome the non-monetary relief sought within the complaint. Thus, plaintiffs have standing under Section 2 and Section 5 of the Voting Rights Act because all three elements required for standing, as set out in Lujan, 504 U.S. at 560, are satisfied in this case.

### B. Mootness

Ganje argues that plaintiffs' requests for injunctive and declaratory relief are moot with regard to Section 2 and Section 5 of the Voting Rights Act because their names are currently on the voter list. Plaintiffs argue that their claims are not moot because their past injuries are capable of repetition yet evading review. See Morse v. Republican Party of Virginia, 517 U.S. 186, 235 n.48 (1996) (noting that a challenge to an electoral practice is not moot if the challenged practice "is capable of repetition, yet evading review" (citations omitted)). Therefore, the issue is whether plaintiffs' claims under Section 2 and Section 5 are rendered moot by the fact that plaintiffs' names are currently on the voter registration list and Ganje promises to keep them there.

When a challenged conduct has subsequently stopped, to determine the applicable standard the court must determine whether the change in conduct occurred due to voluntary or involuntary action on the part of the defendant. In Comfort Lake Ass'n v. Dresel Contracting, Inc., 138 F.3d 351

(8th Cir. 1998), the Eighth Circuit Court of Appeals recognized that a defendant must show that it is " '<u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur' " when "a defendant claims that its voluntary action has mooted a controversy." <u>Id.</u> at 355 (citations omitted). Conversely, when a defendant's actions are <u>not</u> voluntary, the applicable standard is whether " 'there is a realistic prospect that the violations alleged in [the] complaint will continue notwithstanding'" a defendant's current change of conduct. <u>Id.</u> (citations omitted).

In order to determine the applicable standard in this case, the court must determine whether the present situation is a result of Ganje's voluntary or involuntary behavior. Here, on March 25, 2009, plaintiffs filed a "Motion for a Temporary Restraining Order or Preliminary Injunction," requesting the restoration of plaintiffs' names to the eligible voting list for the next election on June 9, 2009. (Docket 241). In opposition to that motion, Ganje established that plaintiffs' names had been placed back on the voting list and submitted an affidavit stating that plaintiffs' names would not be removed unless ordered by the court. (Affidavit of Sue Ganje, Docket 42.) On April 13, 2009, plaintiffs then moved to withdraw their "Motion for a Temporary Restraining Order or Preliminary Injunction," in light of Ganje's affidavit. (Docket 46.) The court granted plaintiffs' motion to withdraw their

motion on April 20, 2009. (Docket 47.) No court order was entered compelling Ganje to keep plaintiffs' names on the voter list.

In Mo. Prot. & Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803 (8th Cir. 2007), plaintiff sought injunctive relief to ensure his right to vote. Id. at 811. The plaintiff had been denied the right to vote after being placed under a court-ordered guardianship. The election officials restored the plaintiff's right to vote, however, after being advised that the guardianship order expressly preserved the plaintiff's right to vote. The defendants argued that the plaintiff's claim was "moot because local election officials [had] acknowledged his right to vote." Id. The trial court determined that the defendants' actions were voluntary and applied the stricter standard for determining mootness. Id. The Eighth Circuit Court of Appeals disagreed, finding the defendants' "cessation was not truly voluntary" because "state law required them to obey [the guardianship] court order" that specifically "preserved [the plaintiff's] right to vote." Id.

Based on Carnahan and the procedural history in this case, the court finds that Ganje's act of placing plaintiffs' names back on the voter eligibility list, and promising to keep them on the list, is a voluntary act. Unlike Carnahan, no court order has been entered compelling Ganje to keep plaintiffs' names on the voter registration list. As a result, Ganje must show that it is " 'absolutely clear that the allegedly wrongful behavior could not

15

reasonably be expected to recur' " in order for plaintiffs' non-monetary claims to be deemed moot on account of Ganje's actions. See Comfort Lake Ass'n, 138 F.3d at 355 (citing United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968); United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)).

Applying this standard to plaintiffs' Section 2 claims, it is not absolutely clear that the alleged wrongful behavior in the complaint—the removal of plaintiffs' names—will not reasonably be expected to recur. This is because Ganje has not demonstrated that there is anything, other than her word, keeping plaintiffs' names on the list. Furthermore, Ganje could be removed from office in the future either by retirement or by being defeated during an election and her promise to not remove plaintiffs from the voting list would not be enforceable as to her successor. With regard to Section 5, it is not absolutely clear that the alleged wrongful behavior of using an unprecleared practice or procedure is reasonably expected to stop simply because Ganje promises to keep plaintiffs' names on the eligible voter list. Under the "absolutely clear" standard discussed above, plaintiffs' claims under Section 2 and Section 5 are not moot.

## II. Counts 1, 2, 3, 4, 5 and 8

Ganje moves to dismiss Counts 1, 2, 3, 4, 5, and 8 to the extent they seek injunctive and declaratory relief. She argues that plaintiffs' requests for injunctive and declaratory relief are moot and that plaintiffs lack standing to request such relief. It appears that Ganje is attempting to use Rule 12(b)(6) to dismiss the type of <u>relief</u> that plaintiffs seek. Ganje emphasizes that she is not moving to dismiss those claims requesting monetary damages.[8] (<u>Id.</u> at 1 ("Ganje did not move to dismiss claims requesting monetary damages.").)

Ganje has not identified any authority, however, showing where Rule 12(b)(6) has been used to dismiss the type of relief sought in a complaint. And the court was unable to find any authority for this position. In fact, a plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a "claim" in its entirety. <u>See</u> Fed. R. Civ. P. 12(b)(6) (allowing for a motion to dismiss based upon a "failure to state <u>a claim</u> upon which relief can be granted" (emphasis added)); 5B C. Wright and A. Miller, <u>Federal Practice and Procedure</u>, Civil 3d § 1357, at 668-671 (2004) (noting that the question under Rule 12(b)(6) is whether "the complaint states <u>any</u> legally cognizable claim for relief" (emphasis added)). Plaintiffs are seeking an award of damages if they are successful on Counts 1, 2, 3, 4, 5, and 8, and

---

[8] With the exception of Counts 6 and 7, neither party specifically identified what types of relief were available as to each count.

Ganje does not claim otherwise. Therefore, Ganje's motion to dismiss on the basis that plaintiffs lack standing to seek injunctive or declaratory relief and because plaintiffs' requested relief is moot is denied as to Counts 1, 2, 3, 4, 5, and 8 because plaintiffs have stated a claim under which relief may be granted, namely damages.[9]

Accordingly, it is hereby

ORDERED that Ganje's motion to dismiss (Docket 62) any declaratory or injunctive claims in plaintiffs' first amended complaint is denied.

Dated November 24, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

---

[9] Counts 6 and 7 were addressed in detail because Ganje argued that the Voting Rights Act only allowed for equitable relief. See Olagues v. Russoniello, 770 F.2d 791, 804-05, (9th Cir. 1985).