UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| EILEEN JANIS and<br>KIM COLHOFF,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRIS NELSON, in his official<br>capacity as Secretary of State of<br>South Dakota and as a member of<br>the State Board of Education;<br>MATT McCAULLEY,<br>CINDY SCHULTZ,<br>CHRISTOPHER W. MADSEN,<br>RICHARD CASEY,<br>KAREN M. LAYHER, and<br>LINDA LEA M. VIKEN, in their<br>individual and official capacities as<br>members of the State Board of<br>Elections;<br>SUE GANJE, in her individual and<br>official capacity as Auditor for<br>Shannon County; and<br>LA FAWN CONROY, in her<br>individual and official capacity as a<br>poll worker for Shannon County,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR. 09-5019-KES<br><br><br>ORDER DENYING IN PART AND<br>GRANTING IN PART STATE<br>DEFENDANTS' AMENDED<br>MOTION TO DISMISS, OR IN<br>THE ALTERNATIVE, MOTION<br>FOR JUDGMENT ON THE<br>PLEADINGS |

State defendants Chris Nelson, Matt McCaulley, Cindy Schultz,

Christopher Madsen, Richard Casey, Karen Layher, and Linda Lea M. Viken

move to dismiss all counts in plaintiffs' amended complaint, or in the

alternative, for judgment on the pleadings under Rule 12(b)(6) and 12(c).

Plaintiffs, Eileen Janis and Kim Colhoff, resist defendants' motion.

## BACKGROUND

On February 18, 2009, plaintiffs filed a civil action under 42 U.S.C.

§ 1983 alleging that their right to vote during the 2008 federal, state, and

local elections had been unlawfully denied by defendants.  Plaintiffs filed an

amended complaint on October 7, 2009.  In the amended complaint,

plaintiffs assert eight causes of action that allege various violations of their

rights.  Counts 1 and 2 assert that their rights under the Equal Protection

and Due Process Clauses in both the Federal and South Dakota

Constitutions were violated.  See U.S. Const. amend. XIV, § 1; S.D. Const.

art. VI, §§ 2, 19; S.D. Const. art. VII, § 1.  Counts 3 and 4 allege violations of

the Help America Vote Act (HAVA) and a South Dakota statute.  See 42

U.S.C. §§ 15482, 15483; S.D. Codified Laws § 12-18-39.  Count 5 alleges

violations of the National Voter Registration Act (NVRA).  42 U.S.C. § 1973gg-

6.  In Counts 6 and 7, plaintiffs assert that defendants violated the Voting

Rights Act of 1965.  42 U.S.C. §§ 1973, 1973c (hereinafter "Section 2" and

"Section 5").  Finally, in Count 8, plaintiffs allege violations of the Voting

Rights Act of 1964 and the Privileges or Immunities Clause of the South

Dakota Constitution.  See 42 U.S.C. § 1971; S.D. Const. art. VI, § 18.  State

defendants filed an amended answer to plaintiffs' amended complaint on November 4, 2009.

The amended complaint alleges that on November 4, 2008, plaintiff Eileen Janis, a Native American and resident of Pine Ridge, South Dakota, which is in Shannon County, attempted to vote in the local, state, and federal elections at Billy Mills Hall in Shannon County on the Pine Ridge Reservation. Janis was informed by a poll worker that her name was not on the list of registered voters in the county. After a call was placed to the Shannon County auditor's office, Janis was told that her name was removed from the voter registration rolls because of her January 2008 felony conviction. Janis told the poll workers that she should still be able to vote because she was sentenced only to probation. Janis asked the county election officials for a provisional ballot, but she was not given one.

The amended complaint also alleges that in June of 2008, plaintiff Kim Colhoff checked the voter registration roll book in Shannon County to confirm her eligibility to vote in the June 3, 2008, primary elections, but she did not find her name in the book. The amended complaint alleges that Colhoff's name was also removed from the voter registration roll book on the basis that she was convicted of a felony in January of 2008 even though she was sentenced to probation. The amended complaint also alleges that Colhoff did not cast a provisional ballot because she was never told by

county election officials that she could cast a provisional ballot in the June 3, 2008, primary elections or the November 4, 2008, general elections.

The amended complaint also alleges that the voting rights of other similarly situated individuals are being denied and that the practice of removing the names of other similarly situated individuals from the eligible voting lists results in a disparate and negative impact on Native Americans. Plaintiffs also allege in the amended complaint that defendants have not obtained preclearance under Section 5 of the Voting Rights Act prior to implementing their practice of denying voting rights to people with felony convictions who are on probation.[1]

## STANDARD OF REVIEW

State defendants move for dismissal from all claims in the amended complaint under Federal Rule of Civil Procedure 12(b)(6) or 12(c).[2]  Under

_____

[1] Plaintiffs have attached exhibits to their briefs in opposition to state defendants' motion.  These exhibits are excluded, and the court has not considered them in addressing state defendants' motion.  See Skyberg v. United Food & Commercial Workers, 5 F.3d 297, 302 n.2. (8th Cir. 1993) (stating that when addressing a motion to dismiss, "[a] court has wide discretion in electing to consider matters outside the pleadings").

[2] A motion to dismiss under Rule 12(b)(6) must be filed prior to answering a complaint.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  Therefore, state defendants' motion is technically a motion for judgment on the pleadings under Rule 12(c).  See id.  Regardless of whether state defendants' motion to dismiss falls under Rule 12(b)(6) or Rule 12(c), however, the standard of review is the same.  See id. (noting that the "distinction [between Rule 12(c) and 12(b)(6)] is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions") (citations omitted)).  Recently the

Rule 12(b)(6), the facts alleged in the complaint must be considered true and all inferences must be viewed in favor of the nonmoving party. <u>Strand v. Diversified Collection Serv., Inc.</u>, 380 F.3d 316, 317 (8th Cir. 2004) (citing <u>Stone Motor Co. v. Gen. Motors Corp.</u>, 293 F.3d 456, 465 (8th Cir. 2002)). Recently, the United States Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 1949. The Supreme Court further stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Id.</u> at 1950. "The plausibility standard . . . asks for more than a sheer possibility that defendant has acted unlawfully." <u>Id.</u> at 1949.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>; <u>see also</u> <u>Braden v. Wal-Mart Stores, Inc.</u>, ____ F.3d ____, 2009 WL 4062105, at *6 (8th Cir. Nov. 25, 2009) ("A complaint states a plausible claim for relief if its 'factual content . . . allows

---

United States Supreme Court addressed the proper standard to be applied to a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009). The court will therefore apply the standard of review and applicable case law associated with Rule 12(b)(6) even though state defendants' motion falls under Rule 12(c).

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " (citing <u>Iqbal</u>, 129 S. Ct. at 1949)).  The "fundamental tenet of Rule 12(b)(6) practice" that "inferences are to be drawn in favor of the non-moving party" has not, however, been changed.  <u>Braden</u>, 2009 WL 4062105, at *7 (citations omitted).

### DISCUSSION

**I.    Counts 1 (Equal Protection Clause), 2 (Due Process Clause), and 8 (Civil Rights Act of 1964, 42 U.S.C. § 1971, and State Constitution)**

State defendants move for judgment on the pleadings for all of the counts in plaintiffs' amended complaint.  Local Rule 7.2(A) requires that "a brief containing the specific points or propositions of law <u>with the authorities in support thereof</u> on which the moving party will rely" must be filed with the Clerk when filing a motion that raises a question of law.  <u>See</u> D.S.D. Civ. LR 7.2(A) ("There shall be served on opposing counsel and filed with the Clerk with every motion raising a question of law . . . a brief containing the specific points or propositions of law with the authorities in support thereof on which the moving party will rely[.]") (emphasis added).  State defendants do not mention Counts 1, 2, or 8 or cite to the applicable constitutional provisions, statutes, or any other authority supporting dismissal of these counts.  Nor do state defendants advance any arguments in support of dismissing Counts 1, 2, or 8.  Accordingly, state defendants' motion for judgment on the

pleadings is denied as to Counts 1, 2, and 8.  See Hartford Accident &

Indem. Co. v. Doe Run Res. Corp., 2009 WL 1124945, at *6 (E.D. Mo.

Apr. 27, 2009).

## II.  Count 3 (Section 303 of the Help America Vote Act of 2002 (HAVA), 42 U.S.C. § 15483)

State defendants argue that the amended complaint only contains

allegations of wrongdoing by local and county election officials and that there

are no factual allegations supporting the claim that state defendants

committed any wrongdoing.  Plaintiffs argue that the amended complaint

sufficiently alleges that state defendants failed to fulfill their duties as

required by HAVA.

There are sufficient facts set out in the amended complaint for the

court to draw the reasonable inference that state defendants violated the

requirements set out in Section 303 of HAVA.[3]  The amended complaint

---

[3]  Section 303 of HAVA, 42 U.S.C. § 15483, states in relevant part that "each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State[.]"  See 42 U.S.C. § 15483(a)(1)(A).  The statute also states that "[t]he appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis[.]"  42 U.S.C. § 15483(a)(2)(A).  Then the statute states that "[t]he list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that . . . only voters who are not registered or who are not eligible to vote are removed from the computerized list[.]"  42 U.S.C. § 15483(a)(2)(B).

alleges in Count 3 that state defendants "failed to implement adequate procedures to ensure that Plaintiffs and similarly situated eligible voters are not removed from voter registration lists." (First Amended Complaint, Docket 81 at 10, ¶ 57.) In support of that claim, the amended complaint puts forth two separate instances where plaintiffs' names were removed from the county voter registration list[4] after that person was convicted of a felony and sentenced to probation.[5] Those factual allegations establish facial plausibility with regard to the claim that state defendants failed to implement adequate procedures in compliance with HAVA's mandate that "only voters who are not registered or who are not eligible to vote are removed from the computerized list" and that "eligible voters are not removed in error from the official list of eligible voters." See 42 U.S.C. § 15483(a)(2)(B), 42 U.S.C. § 15483(a)(4)(B).

---

[4] While the amended complaint alleges that plaintiffs' names were not listed in the county voter registration roll book, it is reasonable to infer that their names were also not on the statewide voter registration file because the statewide voter registration file is a "duplicate" file of the counties' voter registration files. See SDCL 12-4-38. See also SDCL 12-4-37 ("Each county auditor shall transmit any changes [] to the master registration file to the secretary of state on a daily basis.").

[5] Under South Dakota's felon disenfranchisement law, a person only loses the right to vote for as long as that person is imprisoned. See SDCL 23A-27-35; Stumes v. Bloomberg, 551 N.W.2d 590, 594 (S.D. 1996) (Sabers, J., concurring specially) (noting that the plaintiff had "no right to vote for legislators while imprisoned" (emphasis added)).

State defendants also argue that they cannot be responsible for any violations of HAVA because HAVA allows local election officials to perform list maintenance and the law in South Dakota only allows county auditors to remove or add names to the master registration file.  See 42 U.S.C. § 15483(a)(2) (requiring that "[t]he appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis"); SDCL 12-4-2 ("The county auditor has complete charge of maintaining and safeguarding the voter registration records in the county."). The state of South Dakota, however, has empowered the State Board of Elections, in which each state defendant is a member, to "promulgate rules . . . concerning . . . voter file maintenance[,] . . . [t]he uniformity of election procedures," and other voting matters.  SDCL 12-1-9.  See also SDCL 12-4-35.  Thus, the fact that county auditors must remove the names from the voter registration lists does not negate the State Board of Elections' responsibilities to fulfill its role under SDCL 12-1-9 in compliance with Section 303 of HAVA.  State defendants' motion for judgment on the pleadings as to Count 3 of the amended complaint is denied because the facts alleged in the amended complaint allow for the reasonable inference that state defendants are liable for the claim alleged therein.  See Braden, 2009 WL 4062105, at *6 ("A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.' " (citing <u>Iqbal</u>, 129 S. Ct. at 1949)).

III. **Count 4 (Section 302 of the Help America Vote Act of 2002 (HAVA), 42 U.S.C. § 15482, and SDCL 12-18-39)**

State defendants argue that the amended complaint fails to allege any wrongdoing on behalf of state defendants and that Section 302 of HAVA and SDCL 12-18-39 only require local election officials to inform a person about the right to cast a provisional ballot. Plaintiffs argue that election officials are required to inform persons of their right to cast a provisional ballot and that plaintiffs were either not told about the right to cast such a ballot or were denied the opportunity to do so.

The amended complaint alleges that "Defendants' failure to notify Plaintiffs of their right to cast a provisional ballot and their failure to allow Plaintiffs to cast a provisional ballot violated HAVA, S.D.C.L. § 12-18-39, and 42 U.S.C. § 1983." (First Amended Complaint, Docket 81 at 11, ¶ 64.) Section 302 of HAVA and SDCL 12-18-39 only require local election officials to inform individuals of their right to cast a provisional ballot. <u>See</u> 42 U.S.C. § 15482(a)(1) ("An election official <u>at the polling place</u> shall notify the individual that the individual may cast a provisional ballot in that election." (emphasis added)); SDCL 12-18-39 ("A member of the <u>precinct election board</u> shall notify any person who is denied the ability to vote that the person may cast a provisional ballot." (emphasis added)). The amended complaint also

acknowledges this characteristic of HAVA and SDCL 12-18-39. (First Amended Complaint, Docket 81 at 11, ¶ 63.)

The facts alleged in the amended complaint state that it was the county officials who failed to inform Colhoff of her right to cast a provisional ballot, (First Amended Complaint, Docket 81 at 7, ¶ 33), and that it was the county election officials who denied Janis's request for a provisional ballot. (First Amended Complaint, Docket 81 at 6, ¶ 23.) There are no facts in the amended complaint suggesting that state defendants denied Janis's request or failed to inform Colhoff of her right to cast a provisional ballot. After viewing all of the alleged facts in favor of plaintiffs, the amended complaint does not support a plausible claim against state defendants with regard to Count 4 because there are no facts allowing for a reasonable inference that state defendants are liable for the claim alleged in Count 4. See Braden, 2009 WL 4062105, at *6 ("A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " (citing Iqbal, 129 S. Ct. at 1949)). Thus, state defendants' motion for judgment on the pleadings is granted as to Count 4 of the amended complaint.

## IV. Count 5 (National Voter Registration Act (NVRA), 42 U.S.C. § 1973gg-6)

State defendants argue that Count 5 of the amended complaint does not allege any failure on behalf of state defendants to fulfill their

11

responsibilities imposed by NVRA.  State defendants also argue that they have complied with NVRA by delegating their responsibilities to local election officials.

Count 5 alleges that state defendants violated NVRA when plaintiffs' names were removed from the official list of eligible voters.  Under NVRA, "each State shall . . . provide that the name of a registrant may not be removed from the official list of eligible voters except . . . as provided by state law, by reason of criminal conviction[.]"  42 U.S.C. § 1973gg-6(a)(3)(B).  NVRA also states that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  42 U.S.C. § 1973gg-6(b)(1).

The amended complaint sufficiently alleges that state defendants violated NVRA.  There are several facts alleged in the amended complaint supporting a reasonable inference that state defendants violated NVRA's requirement that South Dakota provide that a registrant's name not be removed from the official list[6] of eligible voters except as provided by state

_____

[6] The official list of eligible voters for federal elections is the statewide voter registration file.  SDCL 12-4-38 ("[F]or federal elections the statewide file shall be the official voter registration file.").  As stated in footnote 4, it is reasonable to infer that both plaintiffs' names were not listed on the statewide voter registration file because their names were not listed in the county file.  See id.;

law with regard to criminal convictions and that the maintenance of the voter

registration role be uniform and nondiscriminatory.  The amended complaint

alleges that Janis's name was removed from the eligible voter lists because of

her felony conviction even though she was only sentenced to probation.  The

amended complaint also alleges that Colhoff's name was removed after she

was convicted of a felony and sentenced to probation.  These factual

allegations provide a reasonable inference that state defendants violated

NVRA by failing to provide that plaintiffs' names not be removed in violation

of South Dakota's felon disenfranchisement law and by failing to ensure that

the maintenance of the voter registration roll be uniform and

nondiscriminatory.

State defendants argue that their responsibilities under NVRA were

delegated to local election officials and that state defendants are therefore

not responsible for any violations of NVRA.  In <u>United States v. Missouri</u>, 535

F.3d 844 (8th Cir. 2008), the Eighth Circuit Court of Appeals discussed the

ability of states to delegate their responsibilities under NVRA.  <u>Id.</u> at 849

("Some of these provisions [of NVRA] envision delegation, and do not require

the states to do more than delegate.")  As an example, the Eighth Circuit

Court of Appeals discussed a state's ability to delegate the responsibility of

ensuring that "the identity of the voter registration agency through which

SDCL 12-4-37.

any particular voter is registered is not disclosed to the public." Id. (quoting 42 U.S.C. § 1973gg-6(a)(6)).

Based on the Eighth Circuit Court of Appeals discussion on delegation in Missouri, state defendants argue that they cannot be responsible for violating NVRA because under South Dakota law, "[t]he county auditor has complete charge of maintaining and safeguarding the voter registration records in the county."  SDCL 12-4-2; see also SDCL 12-4-18.  Under SDCL 12-4-35, however, "[t]he State Board of Elections may promulgate rules . . . necessary for implementation of the National Voter Registration Act."  See also SDCL 12-4-9 (granting the State Board of Elections the authority to "promulgate rules . . . concerning . . . voter file maintenance [and] . . . [t]he uniformity of election procedures").  Thus, South Dakota has not delegated the responsibility of ensuring that the voter registration roles are maintained in a uniform and nondiscriminatory manner to local election officials only. The court therefore rejects state defendants' argument that only the county auditor is responsible for the alleged violations of NVRA because SDCL 12-4-35 and 12-4-9 demonstrate otherwise.

State defendants also argue that they must be dismissed from Count 5 because South Dakota fulfilled its responsibility under NVRA by passing laws regarding the removal of an individual's name on the basis of a felony conviction.  State defendants again rely on United States v. Missouri, 535

F.3d 844 (8th Cir. 2008).  In <u>Missouri</u>, the Eighth Circuit Court of Appeals

noted the significance of the verb usage in NVRA.  <u>Id.</u> at 849 ("The statute

then lists numerous provisions using different verbs to describe the states'

responsibilities.").  The Eighth Circuit noted that "the term 'require' may

indicate a responsibility to do little more than pass a mandatory law."  <u>Id.</u> at

849.

The term used in the applicable provision of NVRA in this case is

"provide," not "require."  <u>See</u> 42 U.S.C. § 1973gg-6(a)(3) (using the term

"provide").  Thus, the statement in <u>Missouri</u> that a state may only need to

pass a law does not apply in this case.  Furthermore, the term "provide"

indicates that states must "take precautionary measures"[7] to help prevent an

individual's name from being removed from the voter registration list in a

manner that violates the state's felon disenfranchisement law.  <u>See</u> 42 U.S.C.

§ 1973gg-6(a)(3) (requiring states to "provide that the name of a registrant

may not be removed" except as allowed by a state's felon disenfranchisement

laws).  A plain reading of NVRA indicates that Congress wants states to do

more than pass felon disenfranchisement laws; Congress wants states to

"provide" that the registered names are removed from the voter registration

lists in accordance with those laws.  Moreover, the fact that South Dakota

---

[7] The term "provide" is defined as meaning, <u>inter</u> <u>alia</u>, "to take precautionary measures," or "to make preparation to meet a need."  <u>See</u> Merriam-Webster Dictionary available at http://www.merriam-webster.com/dictionary/provide.

has passed several felon disenfranchisement laws does not demonstrate as a matter of law that state defendants, who were delegated the responsibility of enacting rules that are necessary for implementing NVRA's requirements under SDCL 12-4-35, have fulfilled their responsibilities. For these reasons, state defendants' motion for judgment on the pleadings is denied as to Count 5 of the amended complaint.

## V.    Counts 6 and 7 (Sections 2 and 5 of the Voting Rights Act of 1965, 42 U.S.C. §§ 1973, 1973c)

State defendants argue that the amended complaint contains insufficient factual allegations to support Counts 6 and 7, which pertain to Sections 2 and 5 of the Voting Rights Act.[8] The amended complaint alleges

---

[8] Section 2 of the Voting Rights Act states in relevant part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizens of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title[.]

42 U.S.C. § 1973(a).

Section 1973b(f)(2) states that "[n]o voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a member of a language minority group." 42 U.S.C. § 1973b(f)(2).

Section 5 of the Voting Rights Act states in relevant part:

> [W]henever a State or political subdivision . . . shall enact or seek

that state defendants' actions constitute an unprecleared voting practice or procedure and that their actions result in Native Americans, including plaintiffs, having less opportunity than others members of the electorate to participate in the political process. The court finds sufficient facts are alleged to support a reasonable inference that violations of Sections 2 and 5 of the Voting Rights Act are occurring in South Dakota.

In support of Counts 6 and 7, the amended complaint alleges that both plaintiffs are Native Americans and were registered voters in Shannon County. The amended complaint also alleges that both plaintiffs were convicted of a felony and sentenced to probation. The amended complaint further alleges that both plaintiffs' names were removed from the list of eligible voters because of their felony convictions even though they were sentenced only to probation. Additionally, the amended complaint alleges that the voting rights of other people who have been convicted of felonies

---

to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure . . . such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure[.]

42 U.S.C. § 1973c(a).

have been denied regardless of the sentence imposed. Finally, the amended complaint alleges that Native Americans represent a disproportionate number of those who are sentenced to probation.

These alleged facts are sufficient to support a reasonable inference that state defendants are liable for violations of Section 2 of the Voting Rights Act. The amended complaint specifically alleges two similar instances involving the unlawful removal of a Native American's name from the voter registration lists. It is reasonable to infer from those facts that the voting rights of other similarly situated individuals have been violated. Similarly, it is reasonable to infer that the unlawful removal of names of individuals who retain the right to vote has resulted in Native Americans, including plaintiffs, having less opportunity than others to participate in the political process. See 42 U.S.C. § 1973(a). These facts are also sufficient to support a reasonable inference that state defendants have failed to obtain preclearance under Section 5 of the Voting Rights Act for the alleged practices and procedures being implemented in Shannon County.

State defendants argue that they must be dismissed because any wrongdoing alleged to have occurred in Shannon County is the fault of the county auditor and not the fault of state defendants. As emphasized in Chisom v. Roemer, 501 U.S. 380 (1991), however, "the [Voting Rights Act of 1965] should be interpreted in a manner that provides 'the broadest possible

scope' in combating racial discrimination." Id. at 403 (quoting Allen v. State

Board of Elections, 393 U.S. 544, 567 (1969)).  In light of the broad scope of

the Voting Rights Act and the facts set forth in the amended complaint and

discussed above, it is reasonable to infer that state defendants may be liable

for the alleged violations of Sections 2 and 5 of the Voting Rights Act because

they are authorized to promulgate rules pertaining to numerous voting

matters, including the uniformity of election procedures, voter file

maintenance, and implementation of the NVRA.  See SDCL 12-1-9; SDCL 12-

4-35.  See also Bone Shirt v. Hazeltine, 200 F. Supp. 2d 1150, 1156 (D.S.D.

2002) (stating that with regard to Section 5 of the Voting Rights Act, "when

Congress used the words 'shall enact or seek to administer,' Congress

intended that either the legislative body that enacted the legislation or the

executive body that was responsible for administering the legislation would

be responsible for obtaining preclearance"), aff'd, 461 F.3d 1011 (8th Cir.

2006).

State defendants also argue that Section 5 of the Voting Rights Act is

unconstitutional as applied to Shannon County.  In support of this

argument, state defendants contend that the facts relied on by Congress in

the 2006 renewal of Section 5 were outdated and that Shannon County is

experiencing high voter registration rates and above national average voter

turnout rates.  See also Nw. Austin Mun. Util. Dist. No. One v. Holder, 129 S.

Ct. 2504, 2511-12 (2009) (noting the presence of "constitutional concerns" with regard to Section 5 of the Voting Rights Act but refraining from reaching those issues under the principle of constitutional avoidance).

In South Carolina v. Katzenbach, 383 U.S. 301 (1966), the Supreme Court indicated that the standard was a deferential standard. Id. at 324 (upholding certain provisions of the Voting Rights Act under the standard that "Congress may use any rational means to effectuate the constitutional prohibition of racial discrimination in voting" (citations omitted)). Later in City of Boerne v. Flores, 521 U.S. 507 (1997), however, the Supreme Court indicated that a less deferential standard applies when it stated that in the context of the enforcement provision of the Fourteenth Amendment "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Id. at 520. Thus, the applicable standard of review for determining whether Congress exceeded its Fifteenth Amendment enforcement power is not entirely clear. See Holder, 129 S. Ct. at 2512 (acknowledging an apparent dispute with regard to the applicable standard of review).

Katzenbach has yet, however, to be overruled or otherwise explicitly modified by the Supreme Court. See Lopez v. Monterey County, 525 U.S. 266, 283 (1999) ("Moreover, we have specifically upheld the constitutionality of [Section] 5 of the [Voting Rights] Act against a challenge that this provision

usurps powers reserved to the States." (citing <u>Katzenbach</u>, 383 U.S. at 334-35; <u>City of Rome v. United States</u>, 446 U.S. 156, 178-83 (1980), <u>superseded by statute</u>, 42 U.S.C. § 1973b, <u>as recognized in</u> <u>Holder</u>, 129 S. Ct. at 2515)). Therefore, the court is bound by the deferential "rational means" standard set forth in <u>Katzenbach</u> because Congress passed Section 5 of the Voting Rights Act pursuant to the Fifteenth Amendment enforcement provision.  <u>See</u> <u>Katzenbach</u>, 383 U.S. at 324 (applying "rational means" standard in reviewing the Voting Rights Act); <u>Rome</u>, 446 U.S. at 177 ("Congress could rationally have concluded that . . . it was proper to prohibit changes that have a discriminatory impact."  (citing <u>Katzenbach</u>, 383 U.S. at 335 and n.47)).  <u>See also</u> <u>Holder</u>, 129 S. Ct. at 2513 ("The Fifteenth Amendment empowers 'Congress,' not the Court, to determine in the first instance what legislation is needed to enforce it.").

Under this deferential standard of review, Congress could have rationally concluded that Section 5 helps enforce the Fifteenth Amendment's prohibition against denying the right to vote on account of race or color.  In <u>Rome</u>, the Supreme Court recognized that "electoral changes by jurisdictions with a demonstrable history of intentional racial discrimination in voting create the risk of purposeful discrimination."  446 U.S. at 177.  As the Eighth Circuit Court of Appeals emphasized, "South Dakota's history of discrimination against Native-Americans has limited their ability to succeed

in the state political process. The vestiges of this discrimination remain,

dampening Native-American interest in South Dakota politics and affecting

the ability of Native-Americans to register, to vote, and to participate in the

electoral process." Bone Shirt v. Hazeltine, 461 F.3d 1011, 1022 (8th Cir.

2006) (citations omitted). Therefore, a risk of a purposeful discrimination in

voting on the basis of race exists, and the risk will likely increase in the

absence of Section 5's preclearance requirement. See Holder, 129 S. Ct. at

2513 (recognizing that "Congress amassed a sizable record in support of its

decision to extend the preclearance requirements" and that "the District

Court found that the [congressional] record 'demonstrated that section 5

prevents discriminatory voting changes' by 'quietly but effectively deterring

discriminatory changes" (quoting Nw. Aust. Mun. Util. Dist. No. One v.

Mukasey, 573 F. Supp. 2d 221, 264 (D.D.C. 2008))). South Dakota's history

of discriminating against Native Americans and the risk that such

discrimination will increase in the absence of the preclearance requirement

set forth in Section 5 of the Voting Rights Act compels the court to reject

state defendants' argument that Section 5 of the Voting Rights Act is

unconstitutional as applied to Shannon County.

Finally, state defendants argue that plaintiffs have only listed state

defendants in an attempt to obtain "massive discovery" in contravention of

Iqbal. See Iqbal, 129 S. Ct. at 1937. In Iqbal, the Supreme Court

acknowledged that discovery "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." See id. at 1953. Iqbal does not, however, stand for the proposition that the prospect of potentially burdensome discovery alone justifies dismissing a government defendant. See id. (noting that litigation is "necessary to ensure that officials comply with the law"). As set out above, sufficient facts are set forth in the amended complaint to allow for the reasonable inference that state defendants may be liable for the alleged violations of Section 303 of HAVA, NVRA, and Sections 2 and 5 of the Voting Rights Act. See Braden, 2009 WL 4062105, at *6 ("A complaint states a plausible claim for relief if its 'factual content . . . allows for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " (quoting Iqbal, 129 S. Ct. at 1949)). Thus, state defendants' motion for judgment on the pleadings is denied as to Counts 3, 5, 6, and 7 of the amended complaint.

Accordingly, it is hereby

ORDERED that state defendants' motion for judgment on the pleadings (Docket 100) is denied with respect to Counts 1, 2, 3, 5, 6, 7, and 8 of the amended complaint.

IT IS FURTHER ORDERED that state defendants' motion for judgment on the pleadings (Docket 100) is granted with respect to Count 4 of the

amended complaint, which alleges violations of Section 302 of HAVA, 42

U.S.C. § 15482.

Dated December 30, 2009.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE