UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| EILEEN JANIS and<br>KIM COLHOFF, | ) | CR. 09-5019-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHRIS NELSON, in his official | ) | ORDER DENYING IN PART AND |
| capacity as Secretary of State of | ) | GRANTING IN PART PLAINTIFFS' |
| South Dakota and as a member of | ) | MOTION TO COMPEL AND |
| the State Board of Education; | ) | DENYING IN PART AND |
| MATT McCAULLEY, | ) | GRANTING IN PART STATE |
| CINDY SCHULTZ, | ) | DEFENDANTS' AND SUE |
| CHRISTOPHER W. MADSEN, | ) | GANJE'S MOTION FOR |
| RICHARD CASEY, | ) | PROTECTIVE ORDER |
| KAREN M. LAYHER, and | ) | |
| LINDA LEA M. VIKEN, in their | ) | |
| individual and official capacities as | ) | |
| members of the State Board of | ) | |
| Elections; | ) | |
| SUE GANJE, in her individual and | ) | |
| official capacity as Auditor for | ) | |
| Shannon County; and | ) | |
| LA FAWN CONROY, in her | ) | |
| individual and official capacity as a | ) | |
| poll worker for Shannon County, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Chris Nelson, Matt McCaulley, Cindy Schultz, Christopher

Madsen, Richard Casey, Karen Layher, and Linda Lea M. Viken (state

defendants) move for a protective order prohibiting certain discovery under

Federal Rule of Civil Procedure 26(c). Defendant Sue Ganje joins state

defendants' motion. Plaintiffs resist defendants' motion for a protective order. Plaintiffs also move to compel discovery from Ganje. Ganje resists plaintiffs' motion to compel.

**BACKGROUND**

On February 18, 2009, plaintiffs filed a civil action under 42 U.S.C. § 1983 alleging that their right to vote during the 2008 federal, state, and local elections had been unlawfully denied by defendants. Plaintiffs then filed an amended complaint on October 7, 2009. In the amended complaint, plaintiffs assert eight causes of action that allege various violations of their rights. Counts 1 and 2 assert that their rights under the Equal Protection and Due Process Clauses in both the Federal and South Dakota Constitutions were violated. See U.S. Const. amend. XIV, § 1; S.D. Const. art. VI, §§ 2, 19; S.D. Const. art. VII, § 1. Counts 3 and 4 allege violations of the Help America Vote Act (HAVA) and a South Dakota statute. See 42 U.S.C. §§ 15482, 15483; S.D. Codified Laws § 12-18-39. Count 5 alleges violations of the National Voter Registration Act (NVRA). 42 U.S.C. § 1973gg-6. In Counts 6 and 7, plaintiffs assert that defendants violated the Voting Rights Act of 1965. 42 U.S.C. §§ 1973, 1973c (hereinafter "Section 2" and "Section 5"). Finally, in Count 8, plaintiffs allege violations of the Voting Rights Act of 1964 and the Privileges or Immunities Clause of the South Dakota Constitution. See 42 U.S.C. § 1971; S.D. Const. art. VI, § 18.

In summary, plaintiffs allege that their names were unlawfully removed from the statewide and county voter registration rolls after having been sentenced to probation for their felony convictions and that they were not given the opportunity to cast provisional ballots despite the existence of both federal and state laws authorizing the use of provisional ballots if a question exists about voter eligibility.  Plaintiffs also allege that their voting rights under Section 2 of the Voting Rights Act have been denied because defendants' actions have a disparate and negative impact on Native Americans and that Section 5 of the Voting Rights Act is being violated because defendants' actions constitute a change in voting practices and procedures that has not been precleared.  Plaintiffs seek declaratory, injunctive, monetary, and other forms of relief.

## DISCUSSION

### I.     Plaintiffs' Motion to Compel

Plaintiffs move to compel Ganje to respond to six interrogatories and five requests for production of documents.  The interrogatories in dispute state as follows:

Interrogatory No. 16 – Plaintiffs' Interrogatory No. 16 states as follows:

For each year since 2002, state, per year:
a.   How many provisional ballots were cast in Shannon County;
b.   How many provisional ballots were counted in Shannon County; and

3

c. For each provisional ballot which was rejected, the basis for that rejection.

Interrogatory No. 17 – Plaintiffs' Interrogatory No. 17 states as follows:

For each year since 2002, state, per year, how many people in Shannon County have been convicted of a felony. In your answer, state how many individuals were convicted of a felony in:
a. A federal court;
b. A South Dakota state court; and/or
c. A court of another state.

Interrogatory No. 18 – Plaintiffs' Interrogatory No. 18 states as follows:

For each year since 2002, state, per year, how many people in Shannon County have been sentenced only to probation as a result of a felony conviction. In your answer, please state how many individuals have received this sentence as a result of:
a. A federal court conviction;
b. A South Dakota court conviction; and/or
c. A conviction in another state.

Interrogatory No. 19 – Plaintiffs' Interrogatory No. 19 states as follows:

For each year since 2002, state, per year, how many Native Americans in Shannon County were convicted of a felony. In your answer, state how many individuals were convicted of a felony in:

a. A federal court;
b. A South Dakota state court; and
c. A court of another state.

Interrogatory No. 20 – Plaintiffs' Interrogatory No. 20 states as follows:
For each year since 2002, state, per year, how many Native Americans in Shannon County have been sentenced only to probation as a result of a felony conviction. In your answer, state how many individuals have received this sentence as a result of:
a. A federal court conviction;
b. A South Dakota court conviction; and/or

c.   A conviction in another state.

Interrogatory No. 21 – Plaintiffs' Interrogatory No. 21 states as
follows:
For each year since 2002, state, per year, how many residents of
Shannon County have had their voter registration terminated or
denied, and state the reason for each termination and denial.

The requests for production of documents in dispute state as follows:

Request for Production No. 6 – Request No. 6 states as follows:
For each year since 2002, produce all correspondence between
Shannon County officials and the Secretary of State's office
and/or the State Board of Elections regarding the removal of
individuals from state and county voter registration lists.

Request For Production No. 7 – Request No. 7 states as follows:
For each year since 2002, produce all documents related to
statewide and countywide policies or procedures regarding the
removal of individuals with felony convictions from the state and
county voter registration lists.

Request for Production No. 8 – Request No. 8 states as follows:
For each year since 2002, produce all documents related to
criminal convictions of South Dakota residents received from:
a.   The U.S. Department of Justice;
b.   Any and all South Dakota state courts; and
c.   Any and all other state courts.

Request For Production No. 9 – Request No. 9 states as follows:
For each year since 2002, produce all documents related to
statewide and countywide policies or procedures regarding
persons whose names were removed from the county and/or
state voter registration database.

Request For Production No. 10 – Request No. 10 states as
follows:
Produce copies of all submissions to the U.S. Department of
Justice and/or the U.S. District Court for the District of
Columbia regarding any proposed changes to voting practices,
policies, or procedures related to the voting rights of people with
felony convictions.

5

Ganje's response to each of these discovery requests included the same general objections, namely that the discovery requests are outside the scope of this litigation, that the information is obtainable from other sources that are less burdensome, and that the burden and expense of those requests outweigh any likely benefit to plaintiffs. When Ganje did respond, she disclosed information that pertained only to plaintiffs. Plaintiffs argue that Ganje did not demonstrate good cause as to why she failed to answer certain interrogatories and requests for production of documents.

As to the issue of the proper scope of discovery, Federal Rule of Civil Procedure 26(b)(1) sets forth the applicable standard in civil cases as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

When "there is an objection that discovery goes beyond material relevant to the parties' claims or defenses," the court must "determine whether the discovery is relevant to the claims or defenses." See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment. In arriving at that determination, the "focus [is] on the actual claims and defenses involved in

the action." See id. "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support." Hohn v. BNSF Ry. Co., 2007 WL 2572440 at *3 (D. Neb. May 10, 2007).

If the discovery request is not relevant to the parties' claims or defenses, then the court must determine "whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment. The "good cause" standard, which must be satisfied before "broader discovery" relating to a case's subject matter may be authorized, "is meant to be flexible." See id. As the advisory committee's note to the 2000 amendment of Rule 26 emphasizes, however, the changes to subdivision (b)(1) "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Id.

Even when a discovery request is otherwise permissible because it is relevant to the claims or defense, or because the request is relevant to the subject matter of the case, "the court must limit the frequency or extent of discovery otherwise allowed" in three situations. See Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 26(b)(1) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."). The first situation where discovery is to be limited is when "the discovery sought is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The second situation occurs when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). The third situation is when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Plaintiffs claim that defendants unlawfully denied plaintiffs' right to vote by denying them a provisional ballot and by unlawfully removing their names from the eligible voter lists after having been convicted of a felony and being sentenced to probation.[1] Thus, material pertaining to the alleged practice of removing the names of individuals who have been convicted of a felony but sentenced only to probation from the eligible voter lists and denying them a provisional ballot are relevant to plaintiffs' claims under Sections 2 and 5 of the Voting Rights Act.

_____

[1]Plaintiffs allege that because South Dakota's felon disenfranchisement law does not apply to those who are sentenced to probation only, defendants are violating Section 2 and Section 5 of the Voting Rights Act by using an unprecleared voting practice or procedure that results in the disparate, negative impact on a protected class that includes plaintiffs.

## A. Interrogatories 16, 18, 20, and 21, and Requests for Production of Documents 6, 7, 9, and 10.

Plaintiffs' interrogatories 16, 18, 20, and 21, and requests for production of documents 6, 7, 9, and 10 are within the scope of plaintiffs' claims because they are relevant to plaintiffs' Voting Rights Act claims. Interrogatories 16 and 21 and requests for production of documents 6, 7, 9, and 10 pertain to plaintiffs' claim under Section 5 of the Voting Rights Act with regard to the practice or procedure for casting provisional ballots or removing names from the voter registration lists and registration database.[2] Interrogatories 18 and 20 pertain to plaintiffs' claim under Section 2 of the Voting Rights Act because they seek information about the removal of the

---

[2] Section 5 of the Voting Rights Act states in relevant part:

> [W]henever a State or political subdivision . . . shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure . . . such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure[.]

42 U.S.C. § 1973c(a).

names of individuals that have been convicted of a felony but sentenced to probation, like plaintiffs, from the voting registration lists.[3]

The court rejects Ganje's arguments that this case only involves plaintiffs' attempts to vote and that any information beyond the specific circumstances surrounding plaintiffs' attempts to vote is irrelevant. This information is relevant to plaintiffs' claim that defendants' practice or procedure with regard to the voter registration lists and provisional ballots must be precleared pursuant to Section 5 of the Voting Rights Act. It does not matter that the requested information may involve individuals that were convicted in a different court or that information about another person's registration being terminated or denied would include reasons unrelated to the reasons plaintiffs' registration was terminated. This information goes directly towards the main issues behind plaintiffs' claims under the Voting

---

[3] Section 2 of the Voting Rights Act states in relevant part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizens of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title[.]

42 U.S.C. § 1973(a). Section 1973b(f)(2) states that "[n]o voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a member of a language minority group." 42 U.S.C. § 1973b(f)(2).

Rights Act:  the voting practice or procedure used by defendants; the impact of such practice or procedure; and whether that practice or procedure has been precleared pursuant to Section 5.

Even if these discovery requests seek information beyond plaintiffs' claims, such information is relevant to the subject matter of this case and good cause exists for allowing the discovery.  See Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery on any matter relevant to the subject matter involved in the action.").  There is good cause for this line of discovery because the information would help reveal the overall practice or procedure behind the removal of an individual's name from the eligible voter lists and voter registration database and whether such practice or procedure must has been properly precleared pursuant to Section 5 of the Voting Rights Act.  Moreover, good cause exists because information about all of the reasons for the termination or denial of voter registration is relevant for purposes of verifying the accuracy of plaintiffs' claim that defendants' actions have a disparate, negative impact on a protected class in violation of Section 2 of the Voting Rights Act.

Furthermore, pursuant to Rule 26(b)(2)(C), the court finds that these discovery requests are not unreasonably cumulative or duplicative.  See Fed. R. Civ. P. 26(b)(2)(C)(i).  There is no other source that is more convenient, less burdensome, or less expensive.  See id.  Ganje is the best and most reliable

source for answering these discovery requests because the events surrounding plaintiffs' claims originated in Shannon County, Ganje is the Auditor for Shannon County, and the requested information directly relates to Shannon County's voter information and voting practices and procedures.

Also, the burden or expense of the proposed discovery does not outweigh the likely benefit in light of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues, and the importance of the discovery in resolving those issues. See Fed. R. Civ. P. 26(b)(2)(C)(iii).[4] The importance of the issues, and the importance of the discovery in resolving those issues, are great in comparison to the burden or expense that may be associated with these requests because the issues involve plaintiffs' voting rights and the potential voting rights of other similarly situated individuals. See Bartlett v. Strickland, 556 U.S. 1, ___, 129 S. Ct. 1231, 1240-41 (2009) ("Passage of the Voting Rights Act of 1965 was an important step in the struggle to end discriminatory treatment of minorities who seek to exercise on of the most fundamental rights of our citizens: the right to vote."). Ganje argues that there would be a great burden and expense in responding to these discovery requests, especially in light of Shannon County's poor economic condition. She has not, however,

---

[4] Ganje has not alleged that there has been ample opportunity to obtain the information by discovery in the action. See Fed. R. Civ. P. 26(b)(2)(C)(ii).

provided any specific reasons or facts demonstrating that the burden or expense of responding to these discovery requests outweighs the likely benefit of allowing such discovery.[5]

The court also finds that Ganje's other arguments that she should not be compelled to respond are without merit. First, Ganje argues that plaintiffs' claims are moot and that they lack standing. These arguments have already been considered and rejected. (Order Den. Def. Ganje's Mot. to Dismiss, Docket 106.) The arguments are rejected here for those same reasons.

Ganje also argues that plaintiffs have not alleged that their names were removed from the voter registration lists on account of their race. In bringing a claim under Section 2 of the Voting Rights Act, however, "plaintiffs are not required to demonstrate that the challenged electoral or structure was designed or maintained for a discriminatory purpose." Thornburg v. Gingles, 478 U.S. 30, 44 n.8 (1986) (citations omitted). Rather, plaintiffs must demonstrate that "a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred

---

[5] Ganje also argues that much of the requested information is not in her possession, custody, or control. If so, then she should state that fact under oath, and the burden and expense of producing the information in her possession should be minor.

representatives." Id. at 47.  This is what is known as the "results test."  See id. at 44 n.8.  In accordance with this "results test" standard, plaintiffs allege in their amended complaint that defendants' act of unlawfully removing Native Americans from the voting registration lists "has resulted in Native Americans, including Plaintiffs, having less opportunity than other members of the electorate to participate in the political process[.]"  (First Amended Complaint, Docket 81 at 13.)

Ganje also argues that the Voting Rights Act does not apply to felon disenfranchisement statutes.  See, e.g., Hayden v. Pataki, 449 F.3d 305 (2d Cir. 2006); Johnson v. Governor of Florida, 405 F.3d 1214 (11th Cir. 2005); Wesley v. Collings, 791 F.2d 1255 (6th Cir. 1986); but see Farrakhan v. Washington, 338 F.3d 1009 (9th Cir. 2003).  Those cases relied on by Ganje, however, involved the plaintiffs attempting to use the Voting Rights Act as a means to strike down the state's felon disenfranchisement statute.  See Hayden, 449 F.3d at 309 (involving the plaintiffs alleging "that a New York State statute that disenfranchises currently incarcerated felons and parolees . . . results in unlawful vote denial and vote dilution" (citation omitted)); Johnson, 405 F.3d at 1216 (involving a "challenge to Florida's felon disenfranchisement law"); Wesley, 791 F.2d at 1257 (involving a challenge of "the Tennessee statute disenfranchising convicted felons").  Here, plaintiffs are not trying to strike down South Dakota's felon disenfranchisement law.

Rather, plaintiffs are relying on South Dakota's felon disenfranchisement laws to support their claims. That is, plaintiffs' claims stem from defendants' actions of deviating from South Dakota's disenfranchisement laws in such a way that disparately and negatively results in a denial of their voting rights under the Voting Rights Act. Thus, Ganje's argument is not dispositive to this case.

Ganje also argues that much of the discovery requested is not in her possession, custody, or control. If Ganje does not have possession, custody, or control of the requested information, then she must state that in her response to plaintiffs' discovery requests. See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 638 (D. Colo. 2007) ("Defendants must either supplement their discovery responses pursuant to Fed. R. Civ. P. 26(e)(2) or certify that such responsive documents are not within their possession, custody, or control."); Williams v. Sprint/United Mgmt. Co., 2005 WL 1941664 at *9 (D. Kan. Aug. 12, 2005) (stating that the defendant "must certify under oath to plaintiff . . . that [the defendant] does not have documents in its possession responsive to this request"); see also Fed. R. Civ. P. 26(g).

And finally, Ganje argues that plaintiffs are using discovery only for the purpose of finding more plaintiffs. Other than Ganje's own assertions, there is nothing to support this allegation. These discovery requests are

permissible because they relate to plaintiffs' claims. Thus, plaintiffs' motion to compel Ganje to respond to plaintiffs' discovery requests is granted as to interrogatories 16, 18, 20, and 21, and requests for production of documents 6, 7, 9, and 10.

**B. Interrogatories 17 and 19 and Request for Production of Documents 8.**

Plaintiffs' interrogatories 17 and 19 and request for production of documents 8 are broader than the previously discussed discovery requests. They seek information about individuals that have been convicted of a felony and the place of the conviction. Plaintiffs' actual claims, however, are centered on the fact that plaintiffs were sentenced to probation. In fact, plaintiffs allege that because they were sentenced to probation only, their names should not have been removed from the eligible voter lists pursuant to South Dakota state law, and they should have been allowed to vote.

Plaintiffs' argument that the requested information about all felony convictions is relevant for purposes of determining the extent of the disenfranchisement of eligible voters is an overly expansive view of their actual claims under the Voting Rights Act.[6] Information about general felony convictions and which court convicted the individual may be relevant to the subject matter of the case, but is not relevant to plaintiffs' actual claims

---

[6] Plaintiffs have only argued that these discovery requests are relevant to their claims under the Voting Rights Act.

which involve individuals being removed from the voting lists after having been sentenced to probation. Good cause does not exist to authorize this discovery on the subject matter of the case. <u>See</u> Fed. R. Civ. P. 26(b)(1)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

Accordingly, the court orders, under Rule 26(b)(1) and 26(b)(2)(C)(iii),[7] that plaintiffs' interrogatories 17 and 19 and request for production of documents 8 are to be limited to information about individuals who have been convicted of a felony and sentenced to probation. Ganje must respond to those discovery requests subject to this limitation. Therefore, plaintiffs' motion to compel a response to interrogatories 17 and 19 and request for production of documents 8 is denied in part to the extent they request information beyond felony convictions resulting in a probation sentence and granted in part to the extent they request information regarding felony convictions resulting in a probationary sentence.

## II. Defendants' Motion for Protective Order

With regard to defendants' motion for protective order, defendants assert that plaintiffs' discovery requests are unduly burdensome and not relevant or reasonably calculated to lead to the discovery of admissible

---

[7] Rule 26(c)(1) also applies because Ganje joins state defendants' motion for protective order.

evidence with regard to plaintiffs' claims.  In response, plaintiffs first argue

that state defendants have waived their right to object to plaintiffs' discovery

requests because defendants failed to object in a timely manner.  Plaintiffs

then argue that their discovery requests are related to their claims, that

defendants are the best source for obtaining the requested information, and

that defendants have not demonstrated that the discovery requests will

subject them to an undue burden.

### A.  Waiver of Right to Object to Discovery Requests

Plaintiffs argue that state defendants waived their right to object

because the response to the discovery requests was beyond the 30-day time

limit set out in Rule 33(b)(2).[8]  Plaintiffs rely on Rule 33(b)(4), which states

that "[a]ny ground not stated in a timely objection is waived unless the court,

for good cause, excuses the failure."  Fed. R. Civ. P. 33(b)(4).  Plaintiffs argue

that state defendants have not demonstrated good cause for failing to

respond within the 30-day time limit.  State defendants contend that

plaintiffs consented to an extension of time to respond to the discovery

requests, that they responded within the extension period, and that their

agreement did not interfere with the discovery deadline established by the

court.

---

[8] Plaintiffs' argument that defendants have waived their right to object does
not appear to be directed towards Ganje.

While "the responding party must serve its answers and any objections within 30 days after being served with the interrogatories[,]" a "longer period of time may be stipulated to under Rule 29[.]" Fed. R. Civ. P. 33(b)(2); <u>see also</u> Fed. R. Civ. P. 34(b)(2)(A) (stating that with regard to a production of documents request, "[a] shorter or longer term may be stipulated to under Rule 29"). Rule 29 states, in relevant part, that "procedures governing or limiting discovery [may] be modified–but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery[.]" Fed. R. Civ. P. 29(b). Thus, under a plain reading of Rule 29, parties are allowed to agree to extend the time period for responding to interrogatories and requests for production of documents as long as such agreements do not interfere with the time set for completing discovery. <u>See</u> <u>id.</u>

Here, the parties agreed to an extension of time for state defendants to respond to plaintiffs' discovery requests and the agreement did not interfere with the time set for completing discovery. On August 27, 2009, plaintiffs stated that they would "consent to [state defendants] sending us your discovery responses by Wed., Sept. 9, 2009, but any motion you file with the court to modify the scheduling order should note that there is a dispute regarding the due date of your responses." (Docket 86-2, Exhbit1, at 2.) On September 8, 2009, state defendants served plaintiffs with their responses,

including objections, to the discovery requests.  On September 9, 2009, state defendants filed this motion for a protective order.  State defendants, therefore, objected to plaintiffs' discovery requests in a timely manner.  Also, the agreement to extend the time for responding to the discovery requests did not interfere with the time set for completing discovery because the discovery deadline was November 2, 2009.  (Docket 57, at 2.)  Thus, state defendants did not waive their right to object because they did so within the stipulated time frame to make such objections and the stipulation between the parties did not interfere with the discovery deadline.

### B.  Merits of Defendants' Motion for Protection Order

With regard to state defendants' motion for a protective order, there are four interrogatories (17, 18, 19, and 20) and two requests for production of documents (8 and 9) that are at issue.[9]  A motion for protective order is governed by Rule 26(c)(1), which states in relevant part that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).  Upon a finding of good cause, the court may "forbid[] the disclosure or discovery" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters."  Id.  The party seeking a protective order has "the burden to demonstrate good cause for issuance of

---

[9] Ganje joins state defendants' motion for a protective order.

the order and that his claim of harm must be based on more than stereotypical and conclusory statements." <u>Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2</u>, 197 F.3d 922, 926 (8th Cir. 1999) (citing <u>Gen. Dynamics Corp. v. Selb Mfg. Co.</u>, 481 F.2d 1204, 1212 (8th Cir. 1973)). Finally, the court must consider "the relative hardship to the non-moving party should the protective order be granted." <u>Id.</u> (citation omitted).

Because plaintiffs' motion to compel Ganje and defendants' motion for protective order involve essentially the same issues and arguments, the reasoning and analysis set out above with regard to plaintiffs' motion to compel applies to defendants' motion for protective order as well.

## 1. Interrogatories 18 and 20 and Request for Production of Documents 9

Interrogatories 18 and 20 are essentially the same as the same numbered discovery requests sent to Ganje with the exception that Ganje's requests deal with Shannon County and state defendants' requests seek information regarding South Dakota. Interrogatories 18 and 20 request information about the removal from the voting registration lists the names of individuals who have been convicted of a felony but sentenced to probation. This information is relevant to plaintiffs' Section 2 claim.

Request for production of documents 9 deals with information about the policies or procedures used by defendants for the removal of names from

the county or state voter registration database.  This information is relevant to plaintiffs' Section 5 claim.

With regard to Rule 26(b)(2)(C), these discovery requests are also not unreasonably cumulative or duplicative.  See Fed. R. Civ. P. 26(b)(2)(C)(i). Also, the court has not been made aware of another source that is more convenient, less burdensome, or less expensive.  See id.  Plaintiffs have not procrastinated in requesting this information.  See Fed. R. Civ. P. 26(b)(2)(C)(ii).  And the burden or expense of the proposed discovery does not outweigh the likely benefit of the evidence to plaintiffs in light of the needs of the case, the parties' resources, the importance of the issues in this case, and the importance of the discovery in resolving those issues.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants' assertions that the discovery requests are far reaching and time consuming are not sufficient to demonstrate good cause for a protective order as to these particular discovery requests.  This case involves important issues associated with voter rights. See Bartlett, 556 U.S. 1, ___, 129 S. Ct. at 1240-41 ("Passage of the Voting Rights Act of 1965 was an important step in the struggle to end discriminatory treatment of minorities who seek to exercise one of the most fundamental rights of our citizens:  the right to vote.").  And these discovery requests are directly associated with resolving

those issues because they pertain to plaintiffs' actual claims under Sections 2 and 5 of the Voting Rights Act.

Defendants argue that plaintiffs are only using these discovery requests for the unrelated purpose of gaining information to use in a different action against the party or in a similar type of lawsuit. Defendants offer no facts or reasons, however, to support this claim. The court is also not aware of any facts or reasons to believe that plaintiffs are using the federal rules of discovery for purposes unrelated to their claims in this case.

Defendants also rely on their arguments as stated in their motion to dismiss. (Docket 55.) The first motion to dismiss was denied without prejudice, (Docket 105), and state defendants have essentially repeated those same arguments in their amended motion to dismiss. (Docket 100). Both of these motions have been denied with respect to plaintiffs' claims under Sections 2 and 5 of the Voting Rights Act. Therefore, good cause does not exist to support a protective order as to interrogatories 18 and 20 and request for production of documents 9. Thus, defendants' motion for a protective order is denied as to interrogatories 18 and 20 and request for production of documents 9 because defendants have not demonstrated good cause to support such an order.

As to defendants' argument that the requested information is not in their possession, Rule 34, which pertains to requests for production of

documents, requires a responding party "to produce . . . items in the responding party's possession, custody or control." See Fed. R. Civ. P. 34(a)(1). To the extent defendants do not have "possession, custody or control" of the requested documents, or if they are without knowledge to answer an interrogatory, they must so state in their response to plaintiffs' discovery requests. See United States v. 11 Bank Accounts, 2008 WL 2660969 at *3 (D.S.D. July 2, 2008) ("If Mr. Jewell has no witnesses that are known to him at this time, he must give a written answer to the government's interrogatory and say so, under oath."); Cache La Poudre Feeds, LLC, 244 F.R.D. at 638 ("Defendants must either supplement their discovery responses pursuant to Fed. R. Civ. P. 26(e)(2) or certify that such responsive documents are not within their possession, custody, or control."); Williams, 2005 WL 1941664 at *9 (stating that the defendant "must certify under oath to plaintiff . . . that [the defendant] does not have documents in its possession responsive to this request"); see also Fed. R. Civ. P. 26(g), 33(b)(3).

### 2. Interrogatories 17 and 19 and Request for Production of Documents 8

Plaintiffs' interrogatories 17 and 19 and request for production of documents 8 are essentially the same as the same numbered discovery requests sent to Ganje, with the exception that the discovery requests sent to Ganje deal with Shannon County and the discovery requests sent to state

defendants seek information regarding South Dakota.  As such, the court's reasoning with regard to there being good cause to limit those discovery requests, as set out under Section I(B), also applies to these discovery requests.

Therefore, plaintiffs' interrogatories 17 and 19 and request for production of documents 8 shall be limited to information about individuals who have been convicted of a felony and sentenced to probation.  <u>See</u> Fed. R. Civ. P. 26(c)(1)(D) ("The court may, for good cause, issue an order to protect a party . . . from . . . undue burden or expense" by "limiting the scope of disclosure or discovery to certain matters"); <u>see also</u> Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(C)(iii).  Defendants must still respond to those discovery requests in accordance with the limitation imposed.  <u>See</u> Fed. R. Civ. P. 26(c)(2) ("If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.").  The relative hardships imposed on plaintiffs by this limitation on these discovery requests will likely be minimal because their claims are based on the fact that individuals sentenced to probation after a felony conviction retain the right to vote in South Dakota.  Thus, as to interrogatories 17 and 19 and request for production of documents 8, defendants' motion for protective order is granted in part and denied in part as set out above.

## III.    Reasonable Expenses

The court has the authority to award reasonable expenses associated with these motions.  <u>See</u> Fed. R. Civ. P. 37(a)(5).[10]   The court holds that the parties should bear their own expenses because both plaintiffs' motion to compel and defendants' motion for protective order were granted in part and denied in part.  Fed. R. Civ. P. 37(a)(5)(C); <u>see also</u> <u>Impact, LLC v. United Rentals, Inc.</u>, 2009 WL 413713 at *14 (E.D. Ark. Feb. 18, 2009).

## IV.    Extension of Time of Scheduling order

Plaintiffs also ask for an extension of time to identify and provide the reports of retained experts until thirty days after Ganje complies with this court's order on the motion because of the delay associated with these discovery responses.  Ganje has consented to this extension and state defendants have not objected.

Ganje and state defendants have also moved for an extension of the court deadlines.  Plaintiffs do not object to an extension as long as the extension is reasonable.  Therefore, good cause appearing, the court hereby orders that the deadline will be extended as set forth below.

---

[10] Rule 37(a)(5)(A) states that a court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

**CONCLUSION**

In summary, Ganje is ordered to respond to interrogatories 16, 18, 20, and 21, and requests for production of documents 6, 7, 9, and 10. Ganje is also ordered to respond to interrogatories 17 and 19 and request for production of documents 8 to the extent the discovery request seeks information about individuals who have been convicted of a felony and were sentenced to probation. State defendants are denied their request for a protective order regarding interrogatories 18 and 20 and request for production of documents 9. State defendants are granted a limited protective order with regard to interrogatories 17 and 19 and request for production of documents 8 to the extent that they are required to produce only information about individuals who have been convicted of a felony and sentenced to probation.

Accordingly, it is hereby

ORDERED that plaintiffs' motion to compel Ganje to respond (Docket 71) is granted in part and denied in part as set out above. To the extent the motion to compel has been granted, defendants shall respond to the discovery requests by January 29, 2010;

IT IS FURTHER ORDERED that defendants' motion for protective order (Docket 69 & 78) is granted in part and denied in part as set out above. To

the extent the motion for protective order has been denied, defendants shall respond to the discovery requests by January 29, 2010.

IT IS FURTHER ORDERED that state defendants' and Ganje's motions to extend deadlines (Dockets 82 and 83) are granted and the deadlines are:

1. Plaintiffs' disclosure of experts is **February 16, 2010.**

2. Defendants' disclosure of experts is **March 16, 2010.**

3. The deadline for discovery is **April 9, 2010.**

4. The motions deadline is **May 3, 2010**.

IT IS FURTHER ORDERED that plaintiffs' motion for a status conference (Docket 92) is denied.

Dated December 30, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE